UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE A. GENTRY,

        Plaintiff,                        Civil Action No. 11-cv-15422

        v.                               District Judge Arthur J. Tarnow
                                            Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 18]**

        Plaintiff Bruce A. Gentry ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties filed summary judgment motions, (Dkts. 15, 18) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Dkt. 5).

**I.  RECOMMENDATION**

        For the reasons set forth below, this Court finds that substantial evidence supports the Administrative Law Judge's  ("ALJ") decision that Plaintiff did not have a severe impairment or combination of impairments on or before his date last insured ("DLI").  Moreover, this Court finds that the ALJ properly assessed Plaintiff's credibility.  Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

Plaintiff alleges that he became unable to work on January 1, 2002. (Tr. 13.) The Commissioner initially denied Plaintiff's disability application on October 29, 2009. (Tr. 76.) Plaintiff then filed a request for a hearing, and on September 29, 2010, a video hearing was held before ALJ Michael E. Finnie, who considered the case *de novo*. (Tr. 54-76.) Plaintiff was represented at the hearing by counsel. (*Id*.) Joyce R. Shoop, an impartial vocational expert, also appeared at the hearing, but did not testify. (Tr. 54, 56.) In a November 24, 2010 decision, ALJ Finnie determined that Plaintiff was not disabled at any time from January 1, 2002, the alleged onset date, through March 31, 2005, the date last insured. (Tr. 17.) The ALJ's decision became the final decision of the Commissioner on October 18, 2011 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-5.) Plaintiff subsequently filed this suit on December 9, 2011. (Dkt. 1, Compl.)

### B. Background

Plaintiff was 48 years old on the alleged disability onset date. (Tr. 61.) Plaintiff had a high school education and attended some college. (*Id*.) Plaintiff testified that he worked in a machinery building business, doing mainly skilled labor jobs. (Tr. 61-63.) In addition, Plaintiff testified that he worked on computers in the late 1990's and in 2000. (Tr. 63.)

#### 1. Plaintiff's Testimony

When questioned by the ALJ regarding what caused him to quit working, Plaintiff responded:

> Well, part of it is leg pain. Part of it is ankle pain. Some of it's knee pain. Some of it's butt pain. Some of it's lower back pain. I wake up a lot of mornings, it'd be numb. There was times I couldn't — couldn't kind of get out of bed, and get to where I needed to be, and

>   I would be — you know, before I even just flat out quit working, I —
>   I — I had trouble getting to my job.

(Tr. 64-65.) In addition, Plaintiff testified to undergoing 19 surgeries. (Tr. 65.) When asked why he didn't file an application for disability earlier, in 2002, Plaintiff testified that the biggest reason was his ego. (Tr. 66.) Plaintiff testified that he did not want to admit that he was not going to get better, and that he could get by with the money he had. (*Id*.) Plaintiff indicated that no one had ever recommended that he see a phytologist or psychiatrist. (Tr. 69.) The ALJ determined during the course of the hearing that there was no physical examination in the record, nor any residual functional capacity (RFC). (Tr. 71.) As such, the ALJ believed it was appropriate to order a physical examination of Plaintiff. (Tr. 71-74.)

### 2. Relevant Medical Evidence

The relevant period in this case is the alleged onset date, January 1, 2002, through March 31, 2005, the date last insured. The Court's independent review of the record reveals that there is very little medical evidence within the relevant time period.

On March 6, 2002, Plaintiff had an accident where he jammed his finger in a heavy door and hyper-extended his right ring finger. (Tr. 179.) An x-ray indicated a strain of the flexor tendon. *Id*.) Dr. Levine, Plaintiff's treating physician, also indicated at this time that Plaintiff would resume Lortab 10/500, for his chronic back pain. (*Id*.) A follow-up examination on April 26, 2002 indicated that Plaintiff's finger was doing slightly better, that there was still some tightness of the extensor of the ring finger, but there was no swelling or tenderness in the forearm. (*Id*.) Additionally, Dr. Levine prescribed Bextra and renewed Plaintiff's Lortab for 6 months. (*Id*.)

Plaintiff had one visit at Ducharme Chiropractic Center during the relevant period, on March 3, 2004. (Tr. 226.)

The medications that Plaintiff took during the relevant time period include: Androgel, Pravachol, Roxicodone, Probenecid/Colchicine, Oxycontin, Percocet, Colbenemid, Allegra, Nicotrol Inhaler, Celebrex, Crestor, Tessalon Perles, Cipro, Tussi-12, Velox, and Duratuss. (Tr. 283-290.) However, this evidence is in the form of a printout from Plaintiff's pharmacy and does not detail any specifics regarding his medical conditions.

On October 29, 2009, Dr. Thomas Tsai, M.D. indicated that there was insufficient evidence to conduct a psychiatric review of Plaintiff. (Tr. 227-39.) Dr. Tsai indicated that Plaintiff alleged panic attacks, but that there were "[n]o psych sources" in the record. (Tr. 239.) In addition, Dr. Tsai indicated that there were prescriptions from a pain management clinic, but Plaintiff did not have his first appointment until after the DLI. (*Id.*)

On November 3, 2010, at the request of the ALJ, Dr. Clifford M. Buchman, D.O., an orthopedist, gave Plaintiff a complete physical examination and reviewed all of the medical evidence of record. (Tr. 269-281.) Dr. Buchman's impression was that Plaintiff had extensive degenerative change most pronounced C4-5, 5-6 and 6-7 with canal stenosis, bilateral foraminal narrowing. (*Id.*) Also noted was an increase density in the left upper lung field. (*Id.*) Dr. Buchman's diagnoses included: 1) bilateral foot and ankle pain, probable degenerative osteoarthritis; 2) low back pain persisting following laminectomy in 1994; 3) cervical pain, without findings of radiculopathy; and 4) depression. (*Id.*)

Dr. Buchman was also asked to complete a "Medical Source Statement of Ability to do Work-Related Activities (Physical)." (Tr. 274-81.) In it, Dr. Buchman indicated that Plaintiff was able to lift/carry up to 20 pounds frequently, and up to 50 pounds occasionally, but never over 50 pounds. (Tr. 274.) Dr. Buchman found that Plaintiff could sit for 4 hours without interruption, and

six hours total in an 8 hour work day. (Tr. 275.) He also found that Plaintiff could stand for 4 hours without interruption in an 8 hour work day, but not for more than 6 hours total. (*Id*.) Plaintiff could walk for a total of 3 hours in an 8 hour work day. (*Id*.)

Plaintiff could frequently perform overhead reaching, and all other reaching with his right and left hands, and could continuously perform handling, fingering, feeling, pushing and pulling with his right and left hands. (Tr. 276.) Plaintiff could also frequently operate foot controls with his right or left foot. (*Id*.) Plaintiff could frequently climb stairs or ramps, could occasionally balance, stoop, kneel, crouch, or crawl, but never climb ladders or scaffolds. (Tr. 277.)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act on March 31, 2005—his last date insured. (Tr. 15.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2002—Plaintiff's alleged onset date. (*Id*.) Through the date last insured, the ALJ found that Plaintiff had the following medically determinable impairments: degenerative disc disease of the lumbar spine status post laminectomy, degenerative disc disease of the cervical spine, osteoarthritis of the right ankle, and bursitis of the right elbow. (*Id.*) However, at step two, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal a listed impairment. (Tr. 15.)

The ALJ reviewed Plaintiff's medical records and noted that Plaintiff underwent a right L5-S1 laminectomy, with removal of a herniated disc and a partial foraminotomy of S1, in 1994. (Tr.

16.) Further, in 1995, Plaintiff had some effusion, capsilities and synovitis in the right ankle. (*Id.*) The ALJ noted that a left knee MRI showed a tear of the anterior horn of the lateral meniscus and joint effusion. (*Id.*) An MRI of the right knee showed joint effusion. (*Id.*) In 1997, Plaintiff was diagnosed with post-traumatic cervical and lumbar myofascial pain syndrome. (Tr. 16-17.) Plaintiff was also noted to have osteoarthrosis in the foot and ankle. (Tr. 17.) In December 2000, Plaintiff complained of pain and swelling in the right elbow. (*Id.*) X-rays showed an olecranon spur and some soft tissue swelling. (*Id.*) Olecranon bursitis was assessed. (*Id.*)

The ALJ further noted that Plaintiff's medical records showed that he was treated for various conditions prior to 2002, however, "during the relevant period, the claimant received little to no treatment (and few to no complaints as well) for such impairments." (Tr. 17.) The ALJ acknowledged that evidence dated after Plaintiff's date last insured indicated that his condition may have worsened. However, records from February 2007 indicated that Plaintiff experienced relief from his radicular leg pain after his laminectomy. (*Id.*) Taking the above into consideration, the ALJ determined that Plaintiff had no severe impairments at step two. (*Id.*)

During the hearing there was mention of some mental limitations, and the ALJ noted that his review of the record did "elicit a diagnosis of a mental condition." (Tr. 17.) However, Plaintiff denied having a mental condition at the hearing and reported that no doctor had recommended that he see a psychologist or psychiatrist at any time. (*Id.*)

**E. Standard of Review**

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to

apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

*1. Substantial Evidence Supports the ALJ's Findings at Step Two*

Plaintiff claims that the ALJ erred at step two by finding that Plaintiff did not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). The critical inquiry in this case is whether Plaintiff was able to establish a disability on or before his date last insured — March 31, 2005. *See* 42 U.S.C. § 423 (a), (c). Therefore, the relevant medical evidence is that evidence prior to March 31, 2005, or evidence that relates back to Plaintiff's medical condition during the relevant time period. *Price v. Chater*, 1996 U.S. App. LEXIS 34006, *5 (6th Cir. Nov. 27, 1996) (citing *King v. Sec'y of Health and Human Svcs.*, 896 F.2d 204, 205-06 (6th Cir. 1990) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.")).

The only medical evidence in the record from the relevant time period is a March 6, 2002 notation from Dr. Levine regarding an injury to Plaintiff's right ring finger, (Tr. 179), a March 2005 treatment log regarding a visit to the Ducharme Chiropractic Center, (Tr. 226), and a printout from Plaintiff's pharmacy detailing the medications that he took during that time, (Tr. 283-90.). The record is devoid of any other medical evidence until "well after" the date last insured. And that evidence, as the ALJ acknowledged, indicates that Plaintiff's conditions "may have worsened" after that point. (Tr. 17.) The ALJ further indicated that records from February 2007 suggest that

Plaintiff experienced relief from his radicular leg pain after his laminectomy. (*Id.*)

Importantly, on November 10, 2010, over five years after the date last insured, and at the request of ALJ Finnie, a state agency doctor gave Plaintiff a complete physical exam and reviewed all of Plaintiff's medical records. (Tr. 269-281.) While Plaintiff asks the Court to use Dr. Buchman's report as evidence that Plaintiff had a severe impairment, the Court concludes that Dr. Buchman's report more accurately provides a current assessment of Plaintiff's *then* physical condition. The only statement in the post-hearing report that relates back to the relevant time period is Dr. Buchman's diagnoses where he states: "low back pain persisting following laminectomy in 1994." (Tr. 272.) This statement does not establish that Plaintiff had a severe impairment during the relevant period because it was made over five years after Plaintiff's last date insured and does not specifically indicate that Plaintiff was severely impaired during the relevant time. *See Price v. Comm'r of Soc. Sec.*, No. 96-5092, 1996 U.S. App. LEXIS 34006, at *8 (6th Cir. 1996) (no objective evidence of disabling medical condition was fatal to plaintiff's claim).

Dr. Buchman's diagnoses is also tempered by the notes of Dr. Jeffrey Wingate, M.D., who noted that following Plaintiff's laminectomy, he did "very well with good relief of his radicular leg pain[.]" (Tr. 218.) Dr. Wingate's notes, dated February 14, 2007, are closer to the relevant time period and suggest that Plaintiff's condition improved post-surgery.

Plaintiff acknowledges that he did not receive much treatment during the relevant time period. He suggests, however, it is because he was indigent and that the ALJ failed to take this into consideration. (Pl.'s Reply Br. at 3-4.) However, the record contains nine pages of Plaintiff's prescription drug history from January 1, 1999 until January 1, 2005. (Tr. 283-290.) During this time period, Plaintiff spent $4,987.95 in co-payments alone. This evidence suggests that Plaintiff

did have some money to spend on medical care.

For all of these reasons, the court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff did not have a severe impairment at step two.

### 2. *The ALJ Properly Evaluated Plaintiff's Credibility*

In a related claim of error, Plaintiff argues that the ALJ ignored a substantial amount of evidence from Plaintiff's treating doctors that supports his credibility and shows a severe impairment. The Court has adequately discussed Plaintiff's claim of error as it relates to the ALJ's treatment of the medical evidence during the relevant time period and concludes that the ALJ thoroughly reviewed the record evidence and that substantial evidence supports his findings. Further, this Circuit has held that where the only evidence that would support a claimant's allegations of pain is his own testimony, that testimony is insufficient to document a severe impairment. *Price*, 1996 U.S. App. at *8; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Roberts v. Comm'r v. Soc. Sec.*, No. 09-12593, 2010 U.S. Dist. LEXIS 71994, *25-26 (E.D. Mich. May 24, 2010) (rejecting Plaintiff's credibility argument and upholding ALJ's conclusion that objective medical evidence did not confirm the severity of the alleged pain arising from the condition as supported by substantial medical evidence); *see also* 42 U.S.C. § 423(d)(5)(A) (subjective symptoms alone cannot prove disability, there must be objective medical evidence of an impairment that could reasonably be expected to produce disabling pain or other symptoms).

### 3. Any HALLEX Violation Is Harmless

Plaintiff also contends that the ALJ violated the procedures set forth in the Agency's Hearings, Appeals and Litigation Law Manual ("HALLEX") when he failed to provide Dr. Buchman's post-hearing consultative examination report to Plaintiff. (Pl.'s Mot. Summ. J. at 12-

13.); *see* HALLEX § I-2-7-30. The Commissioner admits that the ALJ did not proffer the post-hearing report, but responds that such an omission should be deemed harmless. (Def.'s Mot. Summ. J. at 9-12.)

Importantly, in *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008), the Sixth Circuit held that while providing "procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals[, HALLEX is] not binding on this court." In this case, while ALJ Finnie did not provide a copy of Dr. Buchman's post-hearing consultative examination report to Plaintiff, the Court agrees with the Commissioner that the omission was harmless. Specifically, the ALJ's decision does not refer to or rely upon Dr. Buchman's post-hearing report in any way. This was appropriate given that Dr. Buchman examined Plaintiff on November 3, 2010, over five years after the last date insured status ended and, as noted above, only one line of Dr. Buchman's diagnoses related back to Plaintiff's condition during the relevant period, which the Court has deemed insufficient medical evidence to establish a "severe" impairment at step two.

Plaintiff nevertheless suggests that if he had the benefit of the post-hearing report, which indicates depression, he would have requested a psychological evaluation and supplemental hearing. However, as discussed above, there is no medical evidence in the record (or in Dr. Buchman's post-hearing report) that indicates Plaintiff suffered from any kind of psychological impairment during the relevant time period. In fact, Plaintiff testified at the hearing that he never had a mental condition and reported that no doctor had recommended that he see a psychologist or psychiatrist at any time. (Tr. 17.)

For these reasons, the Court concludes that any HALLEX violation that occurred in this case is harmless.

### G. Conclusion

For the foregoing reasons, this Court finds substantial evidence supports Administrative Law Judge Michael Finnie's decision that Plaintiff did not have a severe impairment or combination of impairments on or before his date last insured. Moreover, this Court finds that the ALJ properly assessed Plaintiff's credibility. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

### III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

S/Laurie J. Michelson  
Laurie J. Michelson  
United States Magistrate Judge

Dated: December 10, 2012

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on December 10, 2012.

              s/Jane Johnson
              Case Manager to
              Magistrate Judge Laurie J. Michelson